E. R. WRIGHT, Appellee, v. D. BRECKENRIDGE, Appellant, and J. H. STANTON, Defendant.

**Partition:** AGREEMENT: EVIDENCE. In an action to partition real
1   property the evidence arising from lapse of time and acts of the parties, is held to show an agreement between the widow and mother of her deceased husband to divide the estate equally between them, after a refusal of the widow to take under the will, the land in controversy becoming wholly the property of the mother.

**Wills:** RENUNCIATION: WIDOW'S INTEREST. Where the widow of a
2   testator renounces the will she takes only a third interest in the estate, as the will governs the disposition of the remainder, even though a surviving parent is the only other heir.

**Estates:** CONVEYANCE OF WIDOW'S INTEREST. Where a widow has
3   acknowledged receipt of her entire interest in her deceased husband's estate and she has asserted no further claim to specific property for a period of twelve years, equity will not require a formal deed to her interest therein.

*Appeal from Monroe District Court.*— HON. FRANK W. EICHELBERGER, Judge.

TUESDAY, OCTOBER 18, 1904.

SUIT for the partition of a certain 80-acre tract of land. Defendant Stanton was made a party because he claimed an interest therein, and defendant Breckenridge because he held a mortgage on the entire tract. Defendant Stanton made default, and decree was entered against him. Breckenridge answered, and on his answer the case went to trial,

resulting in a decree confirming plaintiff's interest, establishing that of Stanton, and ordering a sale of the entire premises. Defendant Breckenridge appeals. The issues will be referred to in the body of the opinion.— *Reversed.*

*G. H. Fancher* and *T. M. Stuart,* for appellant.

*J. C. Mabry,* for appellee.

DEEMER, C. J.— C. W. Acheson died in Monroe county, Iowa, in January of the year 1888. He left surviving his widow, Cora I., and his mother, T. Caroline. At the time of his death he owned two hundred and sixty-seven acres of land, nearly all in small tracts scattered over the county. The eighty acres in controversy was one of the largest of these. In addition to this land, he owned a small homestead in Albia, upon which he and his wife resided. He also owned a livery stock, worth something over $2,000; some tax certificates, worth over $1,300; and book accounts amounting to more than $1,000. He also held two policies of insurance, aggregating more than $4,000. Acheson made a will, whereby he attempted to cut off his wife with $1,000 in cash, $1,000 of his life insurance, and the homestead above referred to; giving his mother and a niece, Cressie, the remainder of his estate. The will was probated February 27, 1888, and on February 21, 1889, the widow filed a renunciation of the will, and elected to take her interest under the law, including her right of homestead. The mother on the same day filed a paper contesting the right of the widow to renounce the will, pleading an election and estoppel on the part of the widow, and setting out an agreement between the executor and the widow under date of April 24, 1888, and certain receipts signed by the widow for payments of parts of her legacy under the will. A demurrer to this plea was sustained February 27, 1889. March 4, 1889, the widow conveyed the homestead by war-

ranty deed to E. W. Byers.   In April of the year 1899 the
mother quitclaimed to one Ira Stone all her right, title, and
interest in and to the real estate in controversy, and in the
same way Stone. conveyed his interest to James H. Mayes
and wife, and they mortgaged the entire premises to de-
fendant Breckenridge.   In September of the year 1901 the
widow quitclaimed to plaintiff herein an undivided one-half
interest in said eighty acres.   Thus it will be seen that
plaintiff traces his title to an undivided one-half of the
premises to a quitclaim deed from Acheson's wife, and the
defendant mortgagee to a quitclaim of the entire premises
from Acheson's mother.

It is claimed by the defendant that in March of the
year 1889 the widow and mother had a settlement between
themselves wherein it was agreed, with the knowledge and
1. PARTITION:    assistance of the executor of Acheson's estate,
agreement;
evidence.       that all the property, both real and personal,
should be divided equally between them, and that the widow
agreed to accept and did receive for her share of the estate
two-thirds of the proceeds of the. personal property and the
homestead\as and for her own; and the mother was to receive
one-third of the personal estate and the two hundred and
sixty-seven acres of land, including the property in contro-
versy, as and for her share.   This agreement is denied by
plaintiff, and this raises the only question of fact in the case.
A careful examination of the record satisfies us that there
was such an agreement between wife and mother as defend-
ant claims.   We shall not set forth the evidence on which
we base our conclusions, as it is not customary to do so.
The actions and conduct of the parties after the contest over
the widow's renunciation of the provisions of the will were
such as to lead to no other conclusion.   Plaintiff's counsel
argue the case as if the widow was entitled to one-half of
the estate after her election not to take under the will.   But
this is not true.   She only was entitled to her distributive

share.   The other one-sixth she would inherit in case there was no will.   That there was some kind of an arrangement between these parties is conceded by all, and the only difficulty is to determine what it was.   Practically all of the parties to it are dead, and the only ones who could speak are those who, if introduced, would deny defendant's claim. But they have not spoken.   Immediately after the arrangement was made the widow conveyed the entire homestead by warranty deed to the executor, who evidently knew what the agreement was.   Unless the widow was invested with the full title to the homestead, he would not have accepted a deed from her alone, but would have asked some sort of a conveyance from the mother.   This was not done.   Soon thereafter the mother began to sell some of the two hundred and sixty-seven acres of land as her own, and she has since paid taxes on all not disposed of.   The wife has never objected to any of these conveyances, nor did the mother to the conveyance of the homestead.   Plaintiff evidently took the quitclaim as a speculation, for he did not see the land before he bought, nor has he since.   For more than twelve years the widow asserted no title or interest in and to the lands in controversy, or to any other of the two hundred and sixty-seven acres.   She has at all times acted as if there had been some disposition thereof, and she finally signed a receipt in which she acknowledged full satisfaction of all her claims to both real and personal property left by her husband. Nothing was done by the widow until after the death of the mother and the executor.   This delay is explainable only on the theory that she had no interest in the lands in controversy.   On the assumption that each was to have an one-half interest, we find that each received practically the same amount, provided the mother is given the entire two hundred and sixty-seven acres of land, which were not worth to exceed $10 per acre.   Indeed, we think it was worth much less.   The widow was not entitled to the full amount of the

insurance, for the policies were made payable to the mother, and nowhere in the pleadings does plaintiff claim that the widow was entitled to the full amount thereof. The delay on the part of the widow is very significant. We do not hold it conclusive upon her, for it is not necessary to do so. It is such, however, as to add much weight to defendant's claim as to the nature of the agreement. The trial court evidently labored under two mistakes in arriving at its conclusions: First, in assuming that the widow, under the law and the facts, was entitled to all the insurance, notwithstanding the policies were payable to the mother; and, second, in assuming that upon the widow's refusal to take under the will she became entitled to one-half of her husband's estate.

Upon renouncing the will the widow became entitled to but one-third in value of the husband's estate. The one-sixth she could not take by inheritance, because it was willed to another. *Dobson v. Dobson,* 30 Iowa, 410; *Linton v. Crosby,* 54 Iowa, 478; *Smith v. Zuckmeyer,* 53 Iowa, 14. In no event would plaintiff, therefore, be entitled to more than one-third of the land in dispute.

2. WILLS: renunciation; widow's interest.

But the point has a wider significance than this, for it largely accounts for the settlement made by the parties, and lends strong support to defendant's contention. The receipt to which we have referred was objected to largely for the reason that it could not operate as a conveyance of the land from the wife to the mother. If it were relied upon as a deed, that would probably be true; but no such claim is made for it. It was introduced as tending to show the agreement between the parties. For this purpose it was clearly admissible. No formal deed was necessary to enable defendant to assert his claim. The widow has received her price for her interest in the land, and equity will regard that done which should have been

3. ESTATES: conveyance of widow's interest.

done. That no conveyance is necessary in such a case, see *Baldwin v. Hill,* 97 Iowa, 589, and cases cited. To hold otherwise than as here indicated would be to reward laches, and the result would unsettle many titles which have been allowed to rest in apparent security for years. · Such a result should be avoided, and, when it may be with manifest justice to the parties, courts should not hesitate in the conclusion to be reached.

The decree as to Breckenridge is erroneous. His mortgage should be declared a lien upon the entire land, and upon the proceeds therefrom by partition; or he may simply have his lien established against the entire tract, and plaintiff's petition as to this lien is dismissed, if he so elects. He may have a decree in this court if applied for within twenty days from the filing of this opinion; otherwise the case will be remanded for a decree in harmony with this opinion.— *Reversed.*